RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0172p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GEOFFREY N. FIEGER; FIEGER, FIEGER, KENNEY &
JOHNSON, P.C.; JOHN L. BARLOW; J.L. BARLOW AND
ASSOCIATES ADVERTISING, INC.; BILL MILLER;
NANCY FISCHER,

　　　　　　　　*Plaintiffs-Appellants,*

　　　　　　　*v.*

MICHAEL A. COX; STEPHEN J. MARKMAN; TERRI
LYNN LAND; THOMAS J. CAMERON; DOUG BAKER;
DONOVAN MOTLEY,

　　　　　　　　*Defendants-Appellees.*

No. 07-1103

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-73891—Lawrence P. Zatkoff, District Judge.

Argued: March 21, 2008

Decided and Filed: May 6, 2008

Before: MARTIN and NORRIS, Circuit Judges; STAMP, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Michael R. Dezsi, FIEGER, FIEGER, KENNEY, JOHNSON & GIROUX, Southfield, Michigan, for Appellants. Margaret A. Nelson, MICHIGAN DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, Richard J. Suhrheinrich, KITCH, DRUTCHAS, WAGNER, VALITUTTI & SHERBROOK, Okemos, Michigan, for Appellee. **ON BRIEF:** Michael R. Dezsi, FIEGER, FIEGER, KENNEY, JOHNSON & GIROUX, Southfield, Michigan, for Appellants. Margaret A. Nelson, MICHIGAN DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, Richard J. Suhrheinrich, KITCH, DRUTCHAS, WAGNER, VALITUTTI & SHERBROOK, Okemos, Michigan, for Appellee.

---

[*] The Honorable Frederick P. Stamp, Jr., Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

1

---

**OPINION**

---

BOYCE F. MARTIN, JR., Circuit Judge. Plaintiffs Geoffrey N. Fieger, John L. Barlow, Bill Miller, Nancy Fisher, the law firm of Fieger, Fieger & Johnson, and the J.L. Barlow advertising firm brought a vindictive prosecution action against Michigan Attorney General Michael Cox, Michigan Supreme Court Justice Stephen J. Markman, Michigan Secretary of State Terri Lynn Rand, and others in the Michigan Attorney General's office. The district court found that the *Younger* abstention doctrine counseled against exercising jurisdiction where essentially the same issues were being raised in a state court proceeding, and dismissed each of the plaintiffs' claims. Plaintiffs now appeal. For the reasons that follow, we AFFIRM the judgment of the district court.

I

Sometime before the 2004 general election, a group identified as Citizens for Judicial Reform began airing television advertisements encouraging Michigan residents not to re-elect Justice Stephen J. Markman to the Michigan Supreme Court. On October 28, 2004, Dan Pero filed a complaint with the Michigan Secretary of State alleging that Citizens for Judicial Reform had violated the Michigan Campaign Finance Act by failing to register as a political organization with the Department of State, and by not including various disclaimers in the advertisement.[1] A person who knowingly breaks these rules is guilty of a misdemeanor, and in the case of a failure to register, a fine of $1,000. MICH. COMP. LAWS §§ 169.229, 169.247. Under the Campaign Finance Act, the Secretary of State is required to try to correct the violation or prevent a further violation by using "informal methods," *see* MICH. COMP. LAWS § 169.215(10), which it did by sending a letter to Citizens for Judicial Reform informing them of the violation on November 24, 2004. Before this letter was sent, Citizens for Judicial Reform filed their organization registration, although it is unclear what actions they took to correct the advertisements. Nevertheless, because of this updated filing, the Secretary of State informed Mr. Pero that it "consider[ed] the matter resolved."

Citizens for Judicial Reform then failed to file its required Triannual Report in January of 2005. On March 2, the Secretary of State sent a "Notice of Late Filing Fee Due" to Citizens for Judicial Reform assessing a $1,000 fine. Because other recent correspondence with the committee had been returned as undeliverable, the Secretary of State informed the Attorney General on March 16 that Citizens for Judicial Reform was out of compliance with the Campaign Finance Act and requested the Attorney General's assistance in "bringing th[e] committee into compliance" with the law "and prosecuting those who have ignored the law to the fullest extent possible." By the beginning of May, the Attorney General's office had begun to investigate the expenditures, seeking search warrants from the 54-B Judicial District Court in Ingham County, MI.

On May 31, after the investigation had already begun, Citizens for Judicial Reform filed its late January 2005 Triannual Report, disclosing anonymous contributions for the Markman ads totaling $457,163.65, a misdemeanor violation of Michigan election law. *See* MICH. COMP. LAWS § 169.241 ("A person shall not accept or expend an anonymous contribution"). On June 1, 2005, Citizens for Judicial Reform filed an amended January 2005 Report to update the name and address of its treasurer. On June 14, 2005, the committee filed yet another amended January Report, this time to remove the $457,163 in anonymous contributions. The Secretary of State sent a Notice of Error or Omission to the committee on July 8, 2005, asking for an explanation regarding the missing anonymous contributions and expenditures. The committee then failed to timely file its July 2005

---

[1] The Michigan Campaign Finance Act requires advertisements to contain the phrases "not authorized by any candidate," and that the advertisement is paid for "with regulated funds." MICH. COMP. LAWS § 169.247.

Triannual Report, and the Attorney General broadened its investigation to include the possible filing of false organizational statements and false triannual reports.[2]

On June 10, 2005, Geoffrey Fieger filed a late Independent Expenditure Report with the Oakland County, Michigan, clerk's office. *See* MICH. COMP. LAWS § 169.251 (requiring a person who spends more than $100.01 advocating for the election of a candidate or the defeat of a candidate's opponents to file a report of the expenditure within 10 days). This report disclosed money spent during the Markman election, showing payments to the Barlow advertising agency for "political advertisements" in the amount of $453,686.35. The expenditure report did not mention Citizens for Judicial Reform, but no doubt looked strikingly similar to the $457,163 in anonymous contributions reported and deleted by the committee from its January Triannual Report. The Attorney General began investigating Fieger and his law firm for a felony violation of Michigan election law, *see* MICH. COMP. LAWS § 169.254 (prohibiting corporate campaign donations), when it found that checks to the Barlow agency may have been written from the Fieger firm.

On October 10, 2005, the Attorney General served a subpoena on the Fieger firm's bookkeeper, Nancy Fisher, requiring her to produce records from the law firm regarding payments to the Barlow advertising firm. This subpoena, like the search warrants, was issued from the 54-B Judicial District Court in Ingham County, Michigan. Instead of filing motions to quash the warrants or appealing the 54-B court's orders, Fieger, Fisher, and Fieger's firm filed in federal district court a for a Temporary Restraining Order to halt the Attorney General's investigation. When this was denied, Fieger, Fisher, and Barlow filed another collateral attack, this time in Ingham County, MI Circuit Court. This action requested the state circuit court to exercise superintending control over the 54-B court to stop the subpoenas. This court granted the plaintiffs' request and halted the Attorney General's investigation. In response, the Attorney General filed an interlocutory appeal from the state circuit court in the Michigan Court of Appeals, staying the state circuit court's order. The Court of Appeals certified the following questions: (1) whether the Circuit Court has the power to issue a writ of mandamus or superseding control; (2) whether the Circuit Court can issue injunctive relief "to restrain a public official from performing allegedly unlawful or unauthorized acts," and (3) whether the federal district court's denial of a temporary restraining order against the defendants has any res judicata effect in the Court of Appeals.[3] While that appeal was pending, Fieger, Fisher, and Barlow filed another claim in federal district court alleging that the Attorney General had committed Fourth and Fourteenth Amendment violations in its investigation.[4] The district court concluded that the case in state court included "essentially the same plaintiffs as in this action . . . and essentially the same defendants . . . [and] the issues presented in the District 54-B case are substantially similar to those before the Court of Appeals." Dist. Ct. Op. at 8. It held that:

> many of the allegations stem from the same matters at issue here (i.e., the CJR expenditures, the complaint filed by Pero, the referral by the Secretary of State to the Attorney General, the search warrants issued out of the 54-B District Court, the use

---

[2] The Attorney General testified to the district court that it was unable to locate or identify the Treasurer listed on Citizens for Judicial Reform's original filing statement, and the address listed was apparently a burned-out tire store. In addition, the bank listed on the committee's filing statement reported no deposits or checks from its reported bank account.

[3] The Michigan Court of Appeals later ruled that plaintiffs had engaged in improper forum shopping and were required to pursue an appeal in state district court before filing an action for superintending control or mandamus. *Fieger v. Cox*, 274 Mich. App. 449 (Mich. Ct. App. 2007).

[4] On December 19, 2005, the Attorney General appointed a Special Prosecutor to take over the investigation of CJA's and the Fieger firm's campaign activities. In January 2006, this Special Prosecutor determined that no criminal charges should be issued and closed the criminal investigation.

of the Investigative Subpoena Act, and the *subpoena duces tecum* to [the law firm's bookkeeper]), and there are a number of identical issues being litigated in that mandamus action.

*Id.* at 9.  The district court held, as it had in its denial of a Temporary Restraining Order, that because the pending state court actions involved the same matters, the district court would abstain based on *Younger v. Harris*, 401 U.S. 37, 44 (1971).  The district court also ordered Rule 11 sanctions against plaintiffs for their claims against Markman, which it found were "wholly lacking in merit . . . spurred solely by plaintiffs' political and professional animus toward Markman."  Dist. Ct. Op. at 32.  Plaintiffs now appeal to this Court, arguing that the district court improperly abstained because the same issues were not being litigated in state court, and because a First Amendment exception prevents the application of *Younger*.  For the reasons detailed below, we find Plaintiffs' arguments unavailing.

II

This Court reviews a district court's decision to invoke *Younger* abstention *de novo*. *Cooper v. Parrish*, 203 F.3d 937, 954 (6th Cir. 2000).  We review a district court's imposition of sanctions for abuse of discretion.  *Frank v. D'Ambrosi*, 4 F.3d 1378, 1387 (6th Cir. 1993) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399 (1990)).

In *Younger v. Harris*, the Supreme Court held that federal injunctions against a state criminal law enforcement process could be issued only "under extraordinary circumstances where the danger of irreparable loss is both great and immediate."  401 U.S. at 45.  So-called "*Younger* abstention" was later extended to civil proceedings in state court.  *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975). The Supreme Court in these cases noted that federal courts should not act to restrain a criminal prosecution, or interfere with state appellate proceedings.  *Younger*, 401 U.S. at 43; *Huffman*, 420 U.S. at 608.

Three factors determine whether a federal court should abstain from interfering in a state court action: (1) whether the underlying proceedings constitute an ongoing judicial proceeding, (2) whether the proceedings implicate an important state interest, and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge.  *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th Cir 2001).

First and most importantly, there was an "ongoing judicial proceeding" at the time of the district court's review, namely a criminal investigation with the same parties, involving the same underlying set of facts and circumstances.  The Court of Appeals' order of November 10, 2005 certified the following questions for review: (1) whether the Circuit Court has the power to issue a mandamus or superseding control order; (2) whether the Circuit Court can issue injunctive relief "to restrain a public official from performing allegedly unlawful or unauthorized acts," and (3) whether the federal district court's denial of a temporary restraining order against the defendants has any res judicata effect in the Court of Appeals.  Plaintiffs claim that the only issue being considered by the Michigan Court of Appeals was the state circuit court's mandamus power, and the alleged illegal investigation was not being considered.  We find that, although the thrust of the certified questions concerns the powers of the various Michigan courts, the "allegedly unlawful or unauthorized acts" were certainly up for review.  Indeed, in plaintiffs' motion for superintending control with the state circuit court, plaintiffs argued to the court that they wanted to halt the investigation "until the Court of Appeals has a[n] opportunity to rule on this with some finality."  This conclusion is supported by the Michigan Court of Appeals' eventual decision, which thoroughly details the scope of the Attorney General's power to conduct this kind of investigation.  *Fieger v. Cox*, 274 Mich. App. at 467 ("there was no abuse of authority in the Attorney General's conducting, by means of search warrants, the investigation of the Fieger firm's potential violation of [MICH. COMP. LAWS]

§ 169.254."). Although this decision had not been handed down at the time of the district court's opinion, it is further evidence that the legality of the investigation was being considered by the Michigan Court of Appeals.

The second *Younger* factor, whether the proceedings implicate an important state interest, was also present. As the district court found, the issues in the case included "financing of campaign advertisements, criminal activity related to campaign financing, judicial review of criminal proceedings, (*i.e.*, issuance of search warrants and investigative subpoenas), the regulation of the campaign financing, and the relationship between the Secretary of State and the Attorney General regarding enforcement of possible violations of the Act." Dist. Ct. Op. at 13-14. We find all of these to be important state interests under *Younger*.

The third factor, whether there was an adequate opportunity in the state proceedings to raise a constitutional challenge, was present throughout the underlying litigation. *Tindall*, 269 F.3d at 538. Fieger and the other plaintiffs could have filed a motion to quash the search warrants, raised constitutional issues and procedural irregularities through the state appeals process, or challenged evidence seized after the fact. *See, e.g.*, MICH. COMP. LAWS § 767A.6(5) (a court shall not compel a person to answer a subpoena that interferes with a constitutional right). Moreover, they could have brought their federal § 1983 claims in state court. *See Felder v. Casey*, 487 U.S. 131 (1988) (requiring state courts to hear federal constitutional claims). They did not take any of these routes, instead choosing to circumvent state procedure and file in federal court.

Because each of the three prongs of *Younger* abstention were met, the district court properly refrained from exercising its jurisdiction over the case. Finding that the district court properly abstained, it is unnecessary for us to reach the substance of plaintiffs' vindictive prosecution claim.

Plaintiffs' final claim is that the district court's abstention was inappropriate because their complaint involved a First Amendment challenge. *See Houston v. Hill*, 482 U.S. 451, 468 (1987). Plaintiffs claim that Michigan election law § 169.247(2) – requiring radio or television ads to bear the name of the person paying for the advertisement – unconstitutionally abridges free speech. This claim fails because the Supreme Court has said that there is no unabridgeable First Amendment right to broadcast comparable to the right to speak, write, or publish. *See FCC v Nat'l Citizens Comm. for Broad.,* 436 U.S. 775 (1978). State law regulating anonymous television advertisements is not therefore per se unconstitutional, as plaintiffs argue, and their analogy to *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) (prohibiting the criminalization of anonymous handbills), does not apply.

### III

Sanctions may be imposed under the Federal Rules of Civil Procedure for filing frivolous lawsuits or lawsuits for an improper purpose, such as to harass or impose needless cost on a party. FED. R. CIV. P. 11. The district court found that plaintiffs' complaint against defendant Markman was "devoid of any allegations, let alone facts, to support Markman's alleged participation in a conspiracy" against the plaintiffs. Dist. Ct. Op. at 32. We agree.

It is "well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Accordingly, pleading requirements governing civil conspiracies are relatively strict. *See, e.g.*, *Fisher v. City of Detroit*, 1993 U.S. App. LEXIS 23277, at \*16 (6th Cir. Sept. 9, 1993).

In this case plaintiffs failed to allege any material facts to show that Markman engaged in a plan to violate plaintiffs' constitutional rights, and the district court did not abuse its discretion in issuing sanctions. We therefore affirm the district court's order directing that plaintiffs' counsel pay

fees associated with Markman's defense, both in the district court and on appeal here, in a reasonable amount as determined by the district court.

IV

Because the issues raised in the Michigan Court of Appeals were substantially the same as those raised in the district court, because those interests implicated important state interests, and because the plaintiffs had ample opportunity to raise their constitutional challenge in the state proceedings, the district court properly refrained from exercising jurisdiction in this case. Moreover, the district court's imposition of sanctions for plaintiffs' claims against Markman did not represent an abuse of discretion. For these reasons, we AFFIRM the holding of the district court.